# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
DELORES ANN JOHNSON          :    Civ. No. 3:19CV01222(SALM)
                             :
v.                           :
                             :
ANDREW M. SAUL,              :
COMMISSIONER, SOCIAL         :
SECURITY ADMINISTRATION      :    November 9, 2020
                             :
-----------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Delores Ann Johnson ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff moves for an order reversing the Commissioner's decision. [Doc. #13]. Defendant has filed a cross-motion seeking an order affirming the decision of the Commissioner [Doc. #20], to which plaintiff has filed a reply. [Doc. #21].

For the reasons set forth below, plaintiff's Motion to Reverse the Decision of the Commissioner **[Doc. #13]** is **DENIED**, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #20]** is **GRANTED**.

~ 1 ~

I.    **PROCEDURAL HISTORY**[1]

Plaintiff filed concurrent applications for SSI and DIB on December 6, 2016, alleging disability beginning June 1, 2016. See Certified Transcript of the Administrative Record, Doc. #11, compiled on October 4, 2019, (hereinafter "Tr.") at 391-403.[2] Plaintiff's applications were denied initially on February 17, 2017, see Tr. 245-48, and upon reconsideration on July 14, 2017. See Tr. 254-60.

On February 15, 2018, plaintiff, represented by Attorney Levi Roman of Citizens Disability, LLC, appeared and testified at a hearing before Administrative Law Judge ("ALJ") John Noel. See generally Tr. 70-117; see also Tr. 321. Vocational Expert Renee Jubrey testified by telephone at the February 15, 2018, administrative hearing. See Tr. 104-16. On April 16, 2018, the ALJ issued an unfavorable decision. See Tr. 217-39. On July 25, 2018, the Appeals Council granted plaintiff's request for review and entered an Order Remanding Case to Administrative Law Judge. See Tr. 239-43. In pertinent part, the Appeals Council remanded

---

[1] Plaintiff filed a Statement of Facts with her motion and supporting memorandum, see Doc. #13-3, which defendant adopted, see Doc. #20-1 at 2.

[2] The first decision of the ALJ states that the application date was November 16, 2016. See Tr. 220. The reason for this discrepancy is unclear, but it does not affect the Court's analysis.

~ 2 ~

the case to the ALJ for consideration of the opinion of consultative medical examiner Anthony Roselli, M.D. See Tr. 241. The Appeals Council also ordered:

> If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base[.] ... Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

Tr. 242. The Appeals Council instructed the ALJ to "offer the claimant an opportunity for a hearing[.]" Id.

On August 28, 2018, plaintiff, represented by Attorney Jeffrey Plotkin, also of Citizens Disability, LLC, appeared and testified at a second administrative hearing before ALJ Noel. See Tr. 118-66; see also Tr. 34, Tr. 387. Vocational Expert Jill Brown ("VE Brown") testified at the second administrative hearing. See Tr. 154-64. On November 20, 2018, the ALJ issued a second unfavorable decision (hereinafter the "November decision"). See Tr. 31-54. On June 18, 2019, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's November decision the final decision of the Commissioner. See Tr. 1-3. The case is now ripe for review under 42 U.S.C. §405(g).

## II.  __STANDARD OF REVIEW__

The review of a Social Security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial

evidence." (citing <u>Tejada v. Apfel</u>, 167 F.3d 770, 773-74 (2d
Cir. 1999))). "Where there is a reasonable basis for doubt
whether the ALJ applied correct legal principles, application of
the substantial evidence standard to uphold a finding of no
disability creates an unacceptable risk that a claimant will be
deprived of the right to have her disability determination made
according to the correct legal principles." <u>Johnson v. Bowen</u>,
817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set
forth with sufficient specificity to enable [a reviewing court]
to decide whether the determination is supported by substantial
evidence." <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984)
(alterations added) (citing <u>Treadwell v. Schweiker</u>, 698 F.2d
137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject
the testimony of any witness, but a "finding that the witness is
not credible must nevertheless be set forth with sufficient
specificity to permit intelligible plenary review of the
record." <u>Williams ex rel. Williams v. Bowen</u>, 859 F.2d 255, 260-
61 (2d Cir. 1988) (citing <u>Carroll v. Sec. Health and Human
Servs.</u>, 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a
finding is potentially dispositive on the issue of disability,
there must be enough discussion to enable a reviewing court to
determine whether substantial evidence exists to support that

finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing Peoples v. Shalala, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)).

## III. **SSA LEGAL STANDARD**

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments

~ 6 ~

must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §§404.1520(c), 416.920(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §§404.1520, 416.920. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

>Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (alteration added); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). The residual functional capacity ("RFC") is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). "In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v.

<u>Califano</u>, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" <u>Id.</u> (quoting <u>Haberman v. Finch</u>, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.   THE ALJ'S NOVEMBER DECISION

Following the above-described five-step evaluation process, the ALJ concluded that plaintiff had "not been under a disability within the meaning of the Social Security Act from June 1, 2016, through the date of" the ALJ's decision, November 20, 2018. Tr. 35; <u>see also</u> Tr. 46. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 1, 2016. <u>See</u> Tr. 37. At step two, the ALJ found plaintiff had the severe impairments of "degenerative disc disease; depressive, bipolar and related disorders; substance addiction disorders (drugs)[.]" <u>Id.</u> (sic) The ALJ found that plaintiff's "tendonitis of the right shoulder is not a severe impairment." <u>Id.</u>

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1. <u>See</u> Tr. 37-39. In making that determination, the ALJ specifically considered Listings 1.04

(disorders of the spine) and 12.04 (affective disorders). <u>See</u> Tr. 38-39. Before moving on to step four, the ALJ determined that plaintiff had the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can perform simple routine tasks, use judgment limited to simple, work related decisions, and deal with routine changes in the work setting.

Tr. 39. At step four, the ALJ concluded that plaintiff was "unable to perform any past relevant work[.]" Tr. 45. At step five, after considering plaintiff's "age, education, work experience, and" RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform." <u>Id.</u>; <u>see also</u> Tr. 45-46.[3]

## V.   <u>DISCUSSION</u>

Plaintiff limits her challenge on appeal to the ALJ's step five determination that jobs exist in the national economy that she can perform. <u>See generally</u> Doc. #13-1. Specifically, plaintiff contends that: (1) the ALJ failed to properly address rebuttal evidence and a post-hearing objection to VE Brown's testimony; and (2) pursuant to O*NET, each of the jobs identified by VE Brown, and relied on by the ALJ in making the step five determination, are no longer performed at the

---

[3] A more fulsome discussion of the ALJ's step five determination follows below.

unskilled level as required by the RFC. See generally id. at 3-
14. Accordingly, plaintiff contends that the ALJ's step five
findings are not supported by substantial evidence. See
generally id. Defendant responds that remand is not required
because: (1) plaintiff had an opportunity to object at the
second administrative hearing and the ALJ addressed plaintiff's
post-hearing objections in the decision; and (2) the ALJ
reasonably relied on VE Brown's testimony to make his step five
findings, including that the jobs identified by VE Brown were
unskilled based on the Dictionary of Occupational Titles
("DOT"). See Doc. #20-1 at 4-9.

As previously discussed, the claimant generally bears the
burden of establishing that he or she is disabled under the
Social Security Act. See McIntyre v. Colvin, 758 F.3d 146, 150
(2d Cir. 2014). At step five, however, "the burden shifts to
the Commissioner to show there is other work that the claimant
can perform." Id. (citation and quotation marks omitted). At
this step

> the Commissioner must    determine    that    significant
> numbers of jobs exist in the national economy that the
> claimant can perform. See 20 C.F.R. §404.1520(a)(4)(v),
> §416.920(a)(4)(v).    An ALJ may make this determination
> ... by adducing testimony of a vocational expert.
> An ALJ may rely on a vocational expert's testimony
> regarding a hypothetical as long as "there is
> substantial record evidence to support the assumption[s]
> upon which the vocational expert based his
> opinion," see Dumas v. Schweiker, 712 F.2d 1545, 1553-

54 (2d Cir. 1983), and accurately reflect the limitations and capabilities of the claimant involved, see <u>Aubeuf v. Schweiker</u>, 649 F.2d 107, 114 (2d Cir. 1981).

<u>McIntyre</u>, 758 F.3d at 151. Social Security Ruling ("SSR") 00-4p "governs the Commissioner's assessment of whether any particular job can accommodate a given claimant's physical limitations." <u>Lockwood v. Comm'r of Soc. Sec. Admin.</u>, 914 F.3d 87, 91 (2d Cir. 2019). According to SSR 00-4p, "the Commissioner relies primarily on the <u>Dictionary [of Occupational Titles]</u> for information about the job's requirements, but may also use vocational experts to resolve complex vocational issues." <u>Id.</u> (citation and quotation marks omitted).

A.   <u>Background</u>

1.   *VE Brown's Testimony*

On August 28, 2018, the ALJ held a second administrative hearing at which plaintiff testified. <u>See generally</u> Tr. 118-66. Following plaintiff's testimony, the ALJ began his examination of VE Brown by confirming her qualifications and inquiring whether Attorney Plotkin would stipulate to VE Brown's "qualifications to testify as a vocational expert[.]" Tr. 154. After a brief inquiry of VE Brown, Attorney Plotkin stipulated to her qualifications. <u>See</u> Tr. 154-55.

VE Brown began her substantive testimony by describing plaintiff's work history. <u>See</u> Tr. 155-56. The ALJ asked if any

of plaintiff's past work could be performed by "a hypothetical individual of the same age, education, and past work experience as the claimant who has the [RFC] to perform the full range of medium work ... except that person can only perform simple, routine tasks; use judgment limited to simple work-related decisions and deal with routine changes in the work setting." Tr. 156. VE Brown testified that the hypothetical individual would not be able to perform plaintiff's past work, but that other jobs existed in the national economy that could be performed, including:

> One position would be as a cleaner II, someone that cleans the interior of coaches, buses, airplane cabins. The DOT number is 919.687-014. It's unskilled, SVP 1, and medium. In the U.S., there are approximately 76,700 jobs.

> A second position would be as a bagger, which is under packer and packagers. The DOT number is 920.687-014. It's unskilled, SVP 2, and medium. In the U.S., there are approximately 38,800.

> And the third title would be laundry laborer. The DOT number is 361.687-018. It's unskilled, SVP 2, and medium. In the U.S., there are approximately 292,300.

Tr. 156-57. Thereafter, the ALJ confirmed that VE Brown's testimony was consistent with the DOT. See Tr. 157.

The ALJ afforded Attorney Plotkin an opportunity to question VE Brown, which he accepted. See Tr. 158. Attorney Plotkin primarily focused his cross-examination on VE Brown's methodology and how she obtained the job incidence data to which

she had previously testified. <u>See generally</u> Tr. 158-64. At the
conclusion of Attorney Plotkin's cross-examination of VE Brown,
the ALJ asked: "Okay. So are we good with the VE in terms of --
or is there an objection that I need to rule on? Are we all
right?" Tr. 164. Attorney Plotkin responded: "We're all right."
<u>Id.</u>

        *2.    Plaintiff's Post-Hearing Objections*

On September 26, 2018, nearly one month after the second
administrative hearing, non-attorney representative Andrew
Youngman, also of Citizens Disability, LLC, submitted a "Post-
Hearing Memorandum and Objections to the Vocational Witness's
Testimony." Tr. 581-99.[4] Mr. Youngman submitted the memorandum
"in direct response to the testimony of the vocational
witness[,]" Tr. 581, and requested a "supplemental hearing[]" to
address the issues raised in the memorandum, Tr. 585. The
memorandum raised three objections, one of which is the sole
basis of plaintiff's motion for remand here -- specifically,
that according to O*NET, the jobs identified by VE Brown are no
longer performed at the unskilled level and "no longer fall
within the boundaries of the RFC offered at hearing." Tr. 583
(sic) (capitalizations altered); <u>see also</u> Tr. 583-85. Attached

---

[4] The Appointment of Representative for Mr. Youngman states that
he is a "non-attorney eligible for direct payment under SSA
law[.]" Tr. 252.

to the memorandum are two letters from the Department of Labor, each of which pre-dates the second administrative hearing by over five years. See Tr. 586-99.[5]

       3.    *The Step 5 Determination*

At step five, after considering plaintiff's "age, education, work experience, and [RFC]," the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." Tr. 45. At step 5, the ALJ specifically considered VE Brown's testimony that an individual with plaintiff's "age, education, work experience, and" RFC "would be able to perform the requirements of representative occupations such as: cleaner II-medium/SVP 1 (DOT #919.687-014) (76,700 nationally); bagger-medium/SVP2 (DOT #920.687-014) (38,800 nationally); laundry laborer-medium/SVP2 (DOT #361.687-018) (292,300 nationally)." Tr. 46.

Next, the ALJ considered plaintiff's post-hearing objections:

> Although at the hearing, Atty. Plotkin did not object to the testimony or the vocational expert, Andrew Youngman, another of the claimant's representatives, in a September 26, 2018 brief, objected to those job numbers on the ground that the vocational expert's methodology for determining numbers of jobs is not reliable (Exhibit 22F). I overrule this objection.

---

[5] Importantly, and as will be discussed later, plaintiff's representative submitted a nearly identical memorandum (including attachments) after the first administrative hearing held in 2017. See Tr. 532-50.

The vocational expert has professional knowledge and
experience in job placement. Additionally, at the
hearing, the vocational expert sufficiently identified
the sources and methodology she used in formulating her
opinion. She clearly set forth the basis for her
testimony in terms of occupations identified under the
specific DOT code, exertional level, skill level, and
number of jobs, and the governmental and other
publications she used in formulating this opinion. I,
therefore, find that the vocational expert's
professional knowledge as well as the administrative
notice taken of the U.S. Department of Labor statistics
and other sources in accordance with 20 CFR 404.1566 and
416.966, provide necessary foundation for her testimony
regarding the specific number of jobs. Atty. Plotkin was
given ample opportunity to question the vocational
expert at the hearing regarding her sources and
methodology. Accordingly, the vocational expert's job
information is found to be reliable.

Pursuant to SSR 00-4p, I have determined that the
vocational expert's testimony is consistent with the
information contained in the DOT.

Tr. 46.

Bearing that background in mind, the Court turns to

plaintiff's arguments.

B.    The ALJ Adequately Addressed Plaintiff's Post-Hearing
      Objections and "Rebuttal" Evidence

Plaintiff asserts that the ALJ erred by failing to

"acknowledge or discuss" the objection and "rebuttal evidence

submitted that the step 5 jobs are no longer unskilled jobs, as

currently performed, or provide a reviewable rationale for his

ruling." Doc. #13-1 at 3 (emphases removed). Plaintiff contends

that this alleged error "undermines the ALJ's step 5 finding

that there is other work the claimant can do[.]" Id. at 6. Defendant asserts that plaintiff was given an opportunity to object, and the ALJ addressed those objections in the November decision. See Doc. #20-1 at 7-9.

The ALJ adequately considered plaintiff's post-hearing objections and "rebuttal" evidence. See Tr. 46. Although the ALJ explicitly overruled only the objections pertaining to VE Brown's methodology, see id., "[a]n ALJ does not have to state on the record every reason for justifying a decision." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012); accord Johnson v. Berryhill, No. 17CV06436(MWP), 2018 WL 4275985, at *11 (W.D.N.Y. Sept. 7, 2018). Nor is the ALJ "required to discuss every piece of evidence submitted." Brault, 683 F.3d at 448 (citation and quotation marks omitted). Indeed, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." Id. (citation and quotation marks omitted).

Here, the Court is able to glean from the ALJ's decision that he considered plaintiff's post-hearing objection regarding the skill level of the jobs testified to by VE Brown, including the attached "rebuttal" evidence. See Tr. 46. The ALJ referred to, and cited, the memorandum containing the objection and "rebuttal" evidence at issue. See id. The ALJ explicitly noted

that Attorney Plotkin had an opportunity to question VE Brown at the hearing "regarding her sources[,]" but failed to do so. Tr. 46. Ultimately, the ALJ accepted VE Brown's testimony concerning the skill level of the jobs she identified. See id. By doing so, the ALJ implicitly rejected plaintiff's objection and evidence regarding the skill level of the jobs identified by VE Brown. See id.[6]

Plaintiff contends that the ALJ's "implicit decision to discredit evidence" warrants remand. Doc. #13-1 at 11 (emphasis

---

[6] Plaintiff rightly asserts that "a claimant has constitutional and statutory rights to challenge contrary evidence such as a testifying expert, in this case, the vocational expert's testimony." Doc. #13-1 at 5; see Townley v. Heckler, 748 F.2d 109, 114 (2d Cir. 1984)("[A] disability benefits claimant has a right to cross examine the author of an adverse report and to present rebuttal evidence."). That is precisely what happened here. VE Brown testified; Attorney Plotkin was given the opportunity to, and did, cross-examine her; and following that testimony, Attorney Plotkin declined to object. See generally Tr. 158-64; see also Zimmerman v. Comm'r of Soc. Sec., No. 1:18CV01233(DAR), 2019 WL 4736267, at *7 (N.D. Ohio Sept. 27, 2019) (finding no procedural due process violation where plaintiff "had the opportunity to present evidence and cross-examine the vocational expert[]" at the administrative hearing). Thereafter, plaintiff submitted her post-hearing objections and "rebuttal" evidence, which the ALJ addressed in his November decision. Accordingly, there has been no due process violation. Poynter v. Saul, No. 2:17CV02525(JAD)(EJY), 2020 WL 1304489, at *12 (D. Nev. Mar. 19, 2020) ("Immediately after the hearing, Plaintiff was entitled to — and did — object to VE Haney's testimony. Thereafter, the ALJ considered and denied all these objections in his findings. Plaintiff, dissatisfied with the ALJ's findings, then raised her objections concerning VE Haney's testimony before this Court. Thus, no one has denied or is denying Plaintiff's opportunity to present rebuttal evidence and confront evidence against her.").

removed). However, plaintiff cites no controlling precedent in
support of this assertion. Indeed, several other courts
considering this same or similar argument have determined that
an implicit rejection of similar objections and "rebuttal"
evidence does not warrant remand. See Wilkinson v. Saul, No.
3:19CV00045(BKE), 2020 WL 3555149, at *4 (S.D. Ga. June 5, 2020)
("[T]he ALJ's implicit rejection of Plaintiff's post-hearing
arguments without express discussion of them does not constitute
error requiring remand. ... [T]here is no rigid requirement that
the ALJ specifically refer to every piece of evidence in his
decision." (citation and quotation marks omitted)), report and
recommendation adopted, 2020 WL 3549993 (June 30, 2020);
Zimmerman, 2019 WL 4736267, at *9 (Plaintiff "has not provided
jurisprudence that supports his argument that the ALJ had an
obligation to explicitly address his post-hearing objections to
the VE's testimony. Indeed, courts have rejected this
argument."); Postel v. Saul, No. 18CV02017(MAR), 2019 WL
4720990, at *22 (N.D. Iowa Sept. 26, 2019) ("[A]n ALJ's failure
to cite specific evidence does not indicate that such evidence
was not considered. This is especially true in a case like the
one at bar where the ALJ did cite Claimant's objections and
post-hearing brief." (citation and quotation marks omitted)).

Accordingly, even "[a]ssuming the ALJ had to consider [plaintiff's] objection to the VE's testimony, [the Court is] satisfied that he did so. There is no requirement that the ALJ discuss his specific analysis of it." Brault, 683 F.3d at 448[7]; accord Johnson, 2018 WL 4275985, at *11.

Plaintiff next attempts to attack the ALJ's step five rationale, specifically his statement that Attorney Plotkin had "ample opportunity to question the vocational expert at the hearing[.]" Doc. #13-1 at 8 (quoting Tr. 46). Plaintiff asserts that this rationale "neglects the context of Social Security disability hearings and relies upon facially unreasonable assumptions about the nature of the hearing itself." Id. Essentially, plaintiff contends that, despite the experience of her counsel, there was no way to know how the VE would testify at the hearing and that "it is simply not reasonable to expect ... that a representative can effectively raise every possible issue without first consulting the source materials[,]" id. at 10.

The law firm representing plaintiff has unsuccessfully raised similar arguments in other courts across the country. See

---

[7] Plaintiff's attempts to distinguish Brault, see Doc. #21 at 3-4, are unpersuasive given the well-established principle (both in this Circuit and elsewhere) that an ALJ is not required to discuss every piece of evidence in the record.

<u>Postel</u>, 2019 WL 4720990, at *23; <u>Patterson v. Saul</u>, No. 3:18CV00641(BDH), 2019 WL 4237854, at *7 (M.D. Tenn. Aug. 2, 2019), <u>report and recommendation adopted sub nom. Patterson v. Soc. Sec. Admin.</u>, 2019 WL 4237855 (Aug. 23, 2019); <u>Smith v. Berryhill</u>, No. 17CV00401(KLH), 2018 WL 3719884, at *6 (W.D. La. July 19, 2018), <u>report and recommendation adopted</u>, 2018 WL 3715754 (Aug. 3, 2018).

Plaintiff's arguments also fail here. As in the cases cited above, plaintiff's counsel simultaneously proclaims the experience of her office and nevertheless maintains that it was effectively impossible to prepare for, or otherwise respond to, VE Brown's testimony at the administrative hearing. <u>See</u> Doc. #13-1 at 9-10.[8] Plaintiff's argument is particularly weak given the record in this case.

---

[8] Citizens Disability, LLC regularly represents clients at the administrative level who are later represented by plaintiff's counsel's law firm at the federal level. <u>See, e.g.</u>, <u>Patterson</u>, 2019 WL 4237854, at *7; <u>Jeffries v. Berryhill</u>, No. 1:18CV00051(LPA), 2019 WL 1005501, at *6 (M.D.N.C. Mar. 1, 2019), <u>report and recommendation adopted</u>, 2019 WL 2468241 (Mar. 29, 2019); <u>Smith</u>, 2018 WL 3719884, at *6; <u>Locker v. Berryhill</u>, No. 2:17CV00342(LRL), 2018 WL 4232889, at *6 n.11 (E.D. Va. July 6, 2018), <u>report and recommendation adopted</u>, 2018 WL 4224852 (Sept. 5, 2018). It appears there could be some relation between the two firms. <u>See</u> <u>Hebert v. Comm'r of Soc. Sec.</u>, No. 2:16CV00013(KS)(MTP), 2017 WL 5011892, at *1 (S.D. Miss. Nov. 2, 2017) (addressing a fee agreement signed by Lindsay Osterhout, and attorney with Osterhout Disability Law, LLC, and persons associated with Citizens Disability, LLC). Presumably, the attorneys and claimant representatives employed by Citizens Disability, LLC, which appears to have a national presence, also

First, plaintiff's counsel fails to acknowledge the prior administrative hearing held on February 15, 2018, at which a different VE, Ms. Jubrey, testified. See generally Tr. 104-116. During that hearing, the ALJ posed a hypothetical to Ms. Jubrey identical to that posed during the second administrative hearing. Compare Tr. 106, with Tr. 156. Ms. Jubrey testified that given the proposed RFC, a hypothetical individual could perform the representative jobs of sandwich maker, hospital cleaner, and hand packager, each of which, pursuant to the DOT, is performed as unskilled medium work with an SVP of 2. See Tr. 106. At the second administrative hearing, VE Brown testified that the hypothetical individual with the same RFC could perform three different jobs, all of which, also pursuant to the DOT, are performed as unskilled medium work with an SVP of 1 or 2. See Tr. 156-57. Based on: (1) the self-proclaimed experience of plaintiff's attorneys, see Doc. #13-1 at 9; (2) the limited scope of the remand order, see Tr. 239-43; and (3) the fact that vocational experts routinely rely on the DOT, Attorney Plotkin should have anticipated the testimony elicited at the second administrative hearing and should not have been surprised by the VE's reliance on the DOT. Cf. Patterson, 2019 WL 4237854, at *7

---

have significant experience representing claimants at the administrative level.

("Based on counsel's proclamation that his office 'has represented approximately 30,000 claimants in administrative hearings,' it is further reasonable to assume his understanding that ALJs routinely base their hypothetical questions on physical and mental limitations proffered by medical sources in the administrative opinion." (footnote omitted)).

Second, following the first administrative hearing, plaintiff's representative **made the identical objection to Ms. Jubrey's testimony and presented the same purported "rebuttal" evidence now at issue**. Compare Tr. 532-50, with Tr. 581-99. Thus, at the second administrative hearing, Attorney Plotkin should have been well aware that the prior post-hearing objections and "rebuttal" evidence, which were exhibited at the time of the second hearing, could be relevant. See Tr. 52 (List of Exhibits). Indeed, Attorney Plotkin confirmed at the outset of the hearing that he had looked at the exhibits. See Tr. 120. Once VE Brown testified that she was relying on the DOT, Attorney Plotkin could have raised his objections regarding the DOT. Attorney Plotkin, however, did not do so, and instead opted to engage in apparent "[s]andbagging to have a second bite at the apple on remand[.]" Postel, 2019 WL 4720990, at *27.

In reply, plaintiff's counsel brazenly argues "that it is impossible to prepare rebuttal evidence to evidence which does

not yet exist. Without even a minimal opportunity to review the VE's testimony in light of the authorities the expert purported to rely upon, there is no way to even know whether objections are appropriate." Doc. #21 at 4. Although that may be true in some cases, it is simply not true here. Plaintiff's attorneys at the administrative level were able to "preview" the vocational expert testimony from the first administrative hearing. Additionally, the "rebuttal" evidence upon which plaintiff relies consists of two letters that were available well before the second administrative hearing, and, in fact, were already part of the record at the time of the second administrative hearing. See Tr. 52; Tr. 587-99 (letters dated February 12, 2014, and November 19, 2007). Therefore, given his extensive experience, Attorney Plotkin should have "reasonably anticipated that this issue would arise in connection with the VE's testimony and ... should have prepared to respond to testimony on that issue at the ALJ's hearing[.]" Jeffries, 2019 WL 1005501, at *5 (quotation marks and citation omitted); see also Postel 2019 WL 4720990, at *23 ("[S]ince at least 2014, Claimant's representative's firm, Citizens Disability, L.L.C., has known that the BLS is unaware of any data source or methodology for reliably translating the number of jobs from SOC codes to DOT codes because that is what the DOL letter says.

Accordingly, Claimant's representative did not have to familiarize herself with each of the 12,000 jobs of the DOT to question the VE about her methodology. Simply put, Claimant was required to raise her objections at the hearing, notwithstanding any alleged impracticalities in doing so." (citation and quotation marks omitted)).

Accordingly, the ALJ reasonably rejected plaintiff's objection on the ground that it was not raised at the administrative hearing, and her representative had "ample opportunity to question the [VE] regarding her sources[.]" Tr. 46. See, e.g., Patterson, 2019 WL 4237854, at *7 ("[T]he Court finds no error warranting reversal of the Commissioner's decision. ... [A]lthough the ALJ did not directly address the objections contained in Plaintiff's post-hearing brief, she did provide reasons for declining to entertain them, including counsel's ability to cross examine the VE during the administrative hearing.").

Thus, for the reasons stated, the ALJ adequately addressed plaintiff's post-hearing objections and "rebuttal" evidence.

C.   The ALJ Appropriately Relied on the Testimony of VE Brown and the DOT

Notwithstanding the above procedural arguments, plaintiff ultimately contends that the DOT is no longer a reliable source and therefore the ALJ's step five determination, which relies

upon the DOT, is not supported by substantial evidence. <u>See</u>
<u>generally</u> Doc. #13-1 at 4, 11-13. Defendant contends that the
ALJ's reliance on the DOT was reasonable and that courts in the
Second Circuit "have rejected the argument that the DOT is
obsolete[.]" Doc. #20-1 at 5; <u>see also</u> <u>id.</u> at 6.

As plaintiff correctly contends, the ALJ's step five
findings must be based on reliable job information. <u>See</u> Doc.
#13-1 at 4; <u>see also</u> 20 C.F.R. §§404.1566(d), 416.966(d); <u>cf.</u>
<u>Dioguardi v. Comm'r of Soc. Sec.</u>, 445 F. Supp. 2d 288, 299
(W.D.N.Y. 2006) ("Having failed to produce reliable evidence,
the Commissioner failed to meet her burden at step five of the
sequential analysis."). Plaintiff asserts that the DOT is no
longer reliable because it is "out of date[,]" having last been
updated in the late 1970s and early 1980s. Doc. #13-1 at 6 n.5;
<u>see also</u> <u>id.</u> at 7. In support of this argument plaintiff relies
primarily on an unpublished case from the Northern District of
Florida, <u>Sams v. Berryhill</u>, No. 1:17CV0015(CAS), 2017 WL 3974239
(N.D. Fla. Sept. 8, 2018), which remanded a case for the ALJ to
consider O*NET information that conflicted with "the DOT job
descriptions of document preparer, addresser, and cutter and
paster[.]" <u>Id.</u> at *9. Plaintiff's counsel has raised this same
argument with varying success across the country, and in a
footnote, plaintiff cites to a string of ten unpublished and out

of Circuit cases supporting her position that the DOT is no longer a reliable source for job information. See id. at 4-5 n.2.

Notably, plaintiff fails to acknowledge the many cases from both within and outside the Second Circuit that have rejected this same argument. See, e.g., Wilkinson, 2020 WL 3555149, at *4 ("The crux of Plaintiff's argument is that an ALJ commits error by relying on the DOT rather than the more current O*NET database. However, as the Commissioner argues, the ALJ is not required to consider the O*NET database in making Social Security disability determination."); Zimmerman, 2019 WL 4736267, at *9-11 (addressing the same objection as that at issue here, and finding the ALJ was not required to consult the O*NET); Postel, 2019 WL 4720990, at *25 ("[W]hile the DOT appears on the list of governmental and other publications from which the SSA can take administrative notice of reliable job information, the O*NET does not." (citation and quotation marks omitted)); Dennison v. Berryhill, No. 17CV01059(LGF), 2019 WL 2088506, at *9 (W.D.N.Y. May 13, 2019) ("Nor was the VE's reliance on the DOT, characterized by Plaintiff as 'an obsolete and static database that is no longer being developed or enhanced by the USDOL,' erroneous." (citation to brief omitted)); Johnson, 2018 WL 4275985, at *12 (ALJ did not commit

reversible error by "crediting the VE's hearing testimony over the differing job information from O*NET.").

In the Second Circuit (and elsewhere), it is well settled that "the DOT, despite not having been updated in more than 25 years, remains an accepted basis for vocational opinion according to the Commissioner's rules." Strong v. Berryhill, No. 17CV01286(LGF), 2019 WL 2442147, at *6 (W.D.N.Y. June 12, 2019); see also Dennison, 2019 WL 2088506, at *9 (same); Allen o/b/o Allen v. Comm'r of Soc. Sec., No. 5:16CV01207(WBC), 2017 WL 6001830, at *7 (N.D.N.Y. Dec. 4, 2017) ("Although there may be a more updated and comprehensive source for identifying occupations, under the Regulations ALJ's may rely on information taken from the DOT. The ALJ may also rely on VE testimony in which the VE presents data from the DOT." (sic)).

The DOT remains "one of the administratively noticed sources of vocational information[.]" Johnson, 2018 WL 4275985, at *12; see also 20 C.F.R. §§404.1566(d)(1), 416.966(d)(1). The Agency's own Policy Interpretation Ruling states that the Regulations "provide that we will take administrative notice of 'reliable job information' available from various publications, including the DOT." SSR 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000). That same Ruling also states that when "making

disability determinations," the SSA "rel[ies] primarily on the DOT[.]" <u>Id.</u>

Plaintiff argues that the DOT is just an "example" and not a "gold standard[.]" Doc. #13-1 at 11.[9] However, "unlike the DOT, O*NET does not appear in the Social Security Rulings as an approved source nor one with which the VE's testimony must be consistent." <u>Dennison</u>, 2019 WL 2088506, at *9; <u>see also</u> <u>Zimmerman</u>, 2019 WL 4736267, at *10 ("The regulations do not provide that administrative notice may be provided to O*Net, which in fact is not mentioned at all."). Tellingly, plaintiff fails to cite to any case law from within this Circuit finding that a VE's reliance on the DOT was improper.

True, the DOT may be outdated -- it refers to archaic jobs such as a dowel inspector. <u>See, e.g.</u>, <u>Ford v. Comm'r of Soc.</u> <u>Sec.</u>, No. 16CV00657(HBS), 2018 WL 2248532, at *2 (W.D.N.Y. May

_____

[9] The O*NET also has its flaws and the Court questions, but does not comment on, its reliability. For example, the listing for laundry work under the DOT is equated to "51-6198.00 – Helpers—Production Workers[.]" Tr. 584. The O*NET listing for this job states: "Help production workers by performing duties requiring less skill. Duties include supplying or holding materials or tools, and cleaning work area and equipment." Summary Report for: 51-9198.00 – Helpers – Production Workers, O*NET OnLine, https://www.onetonline.org/link/summary/51-9198.00 (last updated August 18, 2020). Despite that description, the O*NET indicates that certain technology skills, such as using Microsoft Excel, are required. <u>See id.</u> The Court has its doubts that a typical laundry worker would be required to have working knowledge of Microsoft Excel.

1, 2018) (VE testimony identifying "inspection jobs. This is a dowel inspector, ... is DOT code 669.687-014. ... There are about 90 such jobs in the region and approximately 97,000 such jobs in the nation."), report and recommendation adopted, No. 2018 WL 2234882 (May 16, 2018). Nevertheless, the is declared a reliable source by the current Social Security Regulations and Rulings. See Wilkinson, 2020 WL 3555149, at *4 ("Even though the DOT may be outdated as Plaintiff strongly argues, he cannot escape that the Code of Federal Regulations and Social Security Rulings expressly list the DOT as a reliable source."). Although the Social Security Administration has plans "to replace the DOT with an occupational information system[,] [u]ntil that time, or any change to §404.1566(d), this Court will continue to consider the DOT a permissible source for disability adjudications." Vicari v. Colvin, No. 13CV07148(PGG)(RLE), 2016 WL 11482254, at *22 (S.D.N.Y. June 22, 2016) (footnotes and quotation marks omitted), report and recommendation adopted, 2016 WL 5660391 (Sept. 30, 2016). Accordingly, the ALJ properly relied on the DOT when making the step five determination.

Plaintiff asserts that the ALJ had "the absolute obligation to actually consider and weigh the competing evidence and explain how the evidence was weighed." Doc. #13-1 at 11 (emphases in original; footnote omitted). The Court construes

this argument as contending that the ALJ was required to
reconcile VE Brown's testimony, which relied on the DOT, with
the O*NET. Again, plaintiff fails to cite to any decision, SSR,
or regulation that requires an ALJ to reconcile a VE's testimony
with the O*NET.

"Even if the VE's testimony was in conflict with O*Net,
there is no requirement that the VE's testimony comply with that
database." Ryan v. Astrue, 650 F. Supp. 2d 207, 218 (N.D.N.Y.
2009). Indeed, "[c]ourts have rejected the notion that a VE's
testimony must be consistent with the O*NET skill levels."
Johnson, 2018 WL 4275985, at *12 (citation and quotation marks
omitted); see also Diana F. v. Saul, No. 5:19CV00043(JCH), 2020
WL 5526501, at *2 n.6 (W.D. Va. July 31, 2020) ("Many courts
have" concluded that an ALJ is "not required to identify or
discuss conflicts between O*NET and VE testimony." (citation and
quotation marks omitted)); Postel, 2019 WL 4720990, at *25
("[E]ven if the VE's testimony was in conflict with O*NET, there
is no requirement that the VE's testimony comply with that
database." (citation and quotation marks omitted)); Zimmerman,
2019 WL 4736267, at *10-*11 (rejecting argument that ALJ was
required to consult, or otherwise reconcile the VE's testimony,
with the O*NET); Kitchen v. Berryhill, No. 3:17CV00178(RJC),
2018 WL 4110546, at *3 (W.D.N.C. Aug. 29, 2018) ("Plaintiff

cites no authority to support the proposition that the ALJ must discuss apparent conflicts between the VE testimony and O*Net. In fact, it is the view of most courts that no such duty exists.").

SSR 00-4p requires an ALJ "to ask about any possible conflict between th[e] VE ... evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4. There is no requirement that an ALJ reconcile VE testimony with O*NET. See Dennison, 2019 WL 2088506, at *9. ("[U]nlike the DOT, O*NET does not appear in the Social Security Rulings as an approved source nor one with which the VE's testimony must be consistent.").[10]

Here, the ALJ specifically asked VE Brown whether her testimony was consistent with the DOT, to which she replied "Yes." Tr. 157. The ALJ also stated in his decision: "Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the DOT." Accordingly, the ALJ fulfilled his duty under SSR 00-4p. See Ryan, 650 F. Supp. 2d at 218 ("[T]he VE's testimony must comply with the DOT, and if there is a conflict between the VE testimony and the DOT, then an explanation must be given.");

---

[10] "In fact, the DOT is so valued that a VE whose evidence conflicts with the DOT must provide a 'reasonable explanation' to the ALJ for the conflict." Brault, 683 F.3d at 446 (quoting SSR 00-4p, 2000 WL 1898704, at *4).

Postel, 2019 WL 4720990, at *25 ("[O]nce an ALJ has established that the VE's testimony is consistent with the DOT, the ALJ has fulfilled her duty."). The ALJ also complied with the Remand Order, which instructed: "[B]efore relying on the vocational expert evidence, the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT)[.]" Tr. 242 (emphasis added).

Finally, plaintiff asserts that "the ALJ's reliance upon the VE's 'experience,' ... conflat[es] the issue of 'credibility' with 'reliability.'" Doc. #13-1 at 13. That argument ignores the well-established case law in this Circuit that "the substantial evidence standard does not foreclose an ALJ from relying on the expertise of a vocational expert[.]" Crespo v. Comm'r of Soc. Sec., No. 3:18CV00435(JAM), 2019 WL 4686763, at *9 (D. Conn. Sept. 25, 2019); accord George v. Saul, No. 3:19CV01456(JAM), 2020 WL 6054654, at *6 (D. Conn. Oct. 14, 2020); see also Tremblay v. Colvin, No. 12CV00037(MAT), 2014 WL 4745762, at *6 (W.D.N.Y. Sept. 23, 2014) ("[A] VE's experience and expertise provide the necessary foundation for his or her testimony."). Accordingly, "[a]n ALJ does not err when he relies on a vocational expert's testimony that is based on personal experience, labor market surveys, and published statistical

sources in determining the number of jobs available." Debiase v. Saul, No. 3:19CV00068(RMS), 2019 WL 5485269, at *11 (D. Conn. Oct. 25, 2019 (citation and quotation marks omitted).

Where, as here, an ALJ relies on the experience of the vocational expert and the DOT, the ALJ has met his or her burden at step five of the sequential analysis. See, e.g., Dennison, 2019 WL 2088506, at *9-*10 ("The evidence in the record also is clear that the VE is a certified rehabilitation counselor, with a master's degree in rehabilitation counseling, a field in which the VE has worked for 39 years, and the VE made clear at the administrative hearing that her testimony was not in conflict with the DOT[.] ... Accordingly, substantial evidence in the record supports the ALJ's reliance on the VE's testimony regarding that jobs exist in substantial numbers in the national economy that can be performed by Plaintiff in light of his RFC. The ALJ thus met her burden at step 5." (citation to the record omitted)); Johnson, 2018 WL 4275985, at *12 ("[T]he VE's hearing testimony made clear that his testimony was based, not just upon the DOT and other sources he identified, but also upon his over twenty-eight years of experience. As the ALJ correctly noted in his decision, '[a] sufficient basis for vocational expert testimony can be the vocational expert's professional knowledge and experience as well as reliance on job information available

from various governmental and other publications, of which the agency takes administrative notice[.]'" (citations to the record omitted)).

Accordingly, substantial evidence supports the ALJ's step five determination, and there is no error.[11]

**VI.   CONCLUSION**

For the reasons stated, plaintiff's Motion to Reverse the Decision of the Commissioner **[Doc. #13]** is **DENIED,** and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #20]** is **GRANTED.**

SO ORDERED at New Haven, Connecticut, this 9th day of November, 2020.

```
                                    /s/
                       _____
                       HON. SARAH A. L. MERRIAM
                       UNITED STATES MAGISTRATE JUDGE
```

---

[11] The hypothetical posed to VE Brown mirrors the ultimate RFC determination, and plaintiff does not challenge that finding. Compare Tr. 156-57, with Tr. 39. "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence, and accurately reflect the limitations and capabilities of the claimant involved[.]" Calabrese v. Astrue, 358 F. App'x 274, 276 (2d Cir. 2009) (citations omitted).